IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No.   03-cv-00281-WDM-MJW

OLOYEA D. WALLIN,

      Plaintiff,

v.

MR. ALFARO, *et al.*,

      Defendants.

---

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE

---

Miller, J.

      This matter is before me on the recommendation of Magistrate Judge Michael J. Watanabe, issued January 25, 2005, as well as various objections and nondispositive motions by Plaintiff Oloyea Wallin (Wallin).  Having been granted two extensions of time, Wallin filed timely objections to the recommendation, and is entitled *de novo* review.  28 U.S.C. § 636(b).

      I have reviewed the recommendation, objections, motions and responses and conclude the recommendation should be accepted in part and rejected in part.

### Background

      The undisputed facts are as follows.[1]  During the relevant time period, Wallin

---

[1]My description of the factual background is based upon the supported and undisputed assertions in the defendants' briefs, allegations from Wallin's sworn amended complaint, and supported factual assertions from his response briefs and

was an inmate at the Kit Carson Correctional Center (KCCC), a privately-owned prison run by the Correctional Corporation of America (CCA), pursuant to a contract with the Colorado Department of Corrections (CDOC).

On February 7, 2002, defendants Alfero, Burk, Gansemer, Miller, and R. Satterly conducted an authorized cell search of Wallin's cell.  They confiscated from the cell a variety of hygiene items, including baby lotion, baby powder, foot powder, toothpaste, six soap bars, as well as various food items.  Wallin was not in his cell during the search, and did not observe it.  Upon returning to his cell, he noticed a "shakedown slip" that indicated that the officers had confiscated "various and sundry commissary items."  (Pl.'s Resp. CDOC Defs.' Mot., Ex. 8(A).)  He immediately wrote down a list of the specific items missing, and that same day, addressed an informal grievance to defendant D. Satterly, the Unit Manager, indicating that his property had been confiscated without any stated reason, and that he needed it back.  D. Slattery never responded to the grievance.

Inmates at KCCC could purchase hygiene (and food items) such as those confiscated from Wallin.  Commissary records indicate that on February 11, 2002, $43.45 was deducted from his funds account for items purchased from the commissary.  Most of the items were food, although he also purchased a toothbrush. Likewise, on February 20, 2002, $38.30 was deducted for commissary purchases, including three bars of soap, toothpaste, and deodorant.

On February 18, 2002, Wallin addressed an informal grievance to defendant

---

objection.

2

Assistant Warden Sloan complaining about the confiscation of his property.  Sloan responded that Wallin should take the matter up with his unit manager.  On February 24, Wallin addressed another grievance to Sloan, noting that he had taken the matter up with D. Satterly and not received a response.  He did not receive a response to this grievance; however, as some point, D. Slattery and Sloan denied Wallin's claim for replacement of his property, noting that it would be impossible to verify Wallin's description of the property taken.

Sometime later, Wallin addressed an informal grievance to defendant Warden Brill.  Brill did not respond, but sometime after September 2002, Wallin personally met with Brill, and raised the issue of his missing property.  Brill responded that he would look into it, but apparently never did so.  Wallin also asked defendants Bair, Fuchs, and Bongirno[2] for assistance, but to no avail.

On April 29, 2002, Wallin filed a formal Step I grievance.  Bair responded to the grievance, indicating that it was untimely, but that she would "follow up."  (CCA Defs.' Mot. Summ. J., Ex. A-3.)  On June 5, 2002, Wallin filed a Step II grievance, and received no response.  On September 5, 2002, Wallin filed a Step III grievance with defendant Gillespie, who denied it on the basis that he was told by KCCC staff that Wallin had not filed any grievances.  Gillespie noted that his denial was the final administrative response and that Wallin had exhausted his administrative remedies.

Wallin filed suit, asserting the following four claims in his amended complaint:

---

[2]Wallin apparently saw Bongirno, the CDOC liaison, in the hall and told him about the problem.  Bongirno told Wallin to send him an informal grievance, which Wallin did.

(1) the defendants violated his rights under the Eighth Amendment by, with regards to Alfero, Burk, Gansemer, Miller, and R. Satterly, confiscating his hygiene items, and by, with regards to the remaining defendants, failing to ensure his hygiene items were returned to him; (2) Alfero, Burk, Gansemer, Miller, and R. Satterly, as well as defendant Ortiz (executive director of CDOC), and defendant Doe (executive director of CCA), because of their supervisor authority, committed the state tort of conversion by depriving him of his personal property; (3) defendants Bair, Bongirno, Brill, Doe, Fuchs, Gillespie, Ortiz, D. Satterly, and Sloan were negligent by failing to adequately perform their professional duties and remedy Wallin's deprivation; and (4) defendants Alfero, Burk, Gansemer, Miller, and R. Satterly, by unjustly depriving Wallin of his property and hygiene items, and defendants Bair, Bongirno, Brill, Doe, Fuchs, Gillespie, Ortiz, D. Satterly, and Sloan, by failing to redress Wallin's unjust deprivation of property, committed intentional infliction of emotional distress.

Recommendation

Defendants CDOC,[3] Ortiz, Bongirno, and Gillespie (the CDOC Defendants) and defendants Alfaro, Bair, Brill, Burk, Fuchs, Gansemer, Miller, D. Satterly, R. Satterly and Sloan (the CCA Defendants) have moved for summary judgment.  I referred the motions to Magistrate Judge Watanabe to pursuant to 28 U.S.C. § 636(b)(1).  On January 25, 2005, Magistrate Judge Watanabe issued a recommendation, prior to

---

[3]CDOC is not named as a defendant in Wallin's amended complaint, and I therefore ignore all arguments that apply only to it.

Wallin filing responses to any of the motions.[4]  Magistrate Judge Watanabe

recommends that (1) Wallin's Eighth Amendment claim (claim one) be dismissed

because it fails on the merits; it is barred by lack of exhaustion and lack of physical

injury under the Prison Litigation Reform Act (PLRA); Wallin fails to demonstrate

personal participation on the part of the CDOC Defendants; and the CDOC

Defendants are entitled qualified immunity; (2) Wallin's intentional infliction of

emotional distress claim (claim two) be dismissed as to the CCA defendants

because they did not commit outrageous conduct; (3) Wallin's negligence claim

(claim three) be dismissed as to the CCA Defendants because he fails to

demonstrate that they breached a duty or that any such breach was the proximate

cause of his injuries; (4) the state law claims should be dismissed against the CDOC

Defendants because they are entitled to immunity from Wallin's state law claims

under the Colorado Governmental Immunity Act (CGIA), and in any case, Wallin failed

to provide timely notice under the CGIA; and (5) I should decline to exercise

jurisdiction over the state law claims.

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

---

[4]The CCA Defendants' motion was filed October 25, 2004, and the CDOC
Defendants' motion was filed November 26, 2004.  Magistrate Judge Watanabe
granted Wallin's motion for an extension of time to respond to the CCA Defendants'
motion through December 15, 2004.  Additional motions for extensions were pending
when Magistrate Judge Watanabe issued his recommendation, which he denied as
unwarranted the same day.  Nonetheless, in my *de novo* review, I have reviewed
Wallin's responses to the summary judgment motions.

Civ. P. 56.  The nonmoving party must set forth facts showing that there is a genuine

issue for trial.  The court views the record in the light most favorable to the party

opposing the summary judgment motion.  *Cummings v. Norton* , 393 F.3d 1186, 1189

(10th Cir. 2005).  A factual issue is genuine if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,* 477

U.S. 242, 248 (1986).

Discussion

1.      Discovery and Pending Objections

        Wallin first objects that the defendants' failures to provide discovery, permitted

by Magistrate Judge Watanabe's erroneous rulings on discovery matters,  prevented

him from being able to effectively defend his claims with evidence.  Wallin asserts that

he must be allowed to defend against the defendants' motions with the allegations in

his complaint in addition to Rule 56(e) evidence.

        Wallin is entitled to discovery sufficient to allow him a fair trial.  *Handy v. Price*,

996 F.2d 1064, 1068 (10th Cir. 1993).  Furthermore, a "district court may treat a

verified complaint as an affidavit for purposes of summary judgment if it satisfies the

standards for affidavits set out in Rule 56(e)." *Lantec, Inc. v. Novell, Inc.*, 306 F.3d

1003, 1019 (10th Cir. 2002).  Nonetheless, accepting that Wallin may rely on his

complaint, I do not find that Magistrate Judge Watanabe's discovery orders require

me to reject his recommendation.

        First, I do not find that Wallin's objections to Magistrate Judge Watanabe's

discovery orders should be sustained.  Because discovery orders concern

nondispositive matters, my review is limited to determining whether they were clearly

6

erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A).  Under this standard, I must

affirm unless I am "left with the definite and firm conviction that a mistake has been

committed."  *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir.

1988).  The relevant objections made by Wallin as to discovery orders are as follows.

Wallin filed an objection (Docket # 171) to Magistrate Judge Watanabe's

October 5, 2004 minute order denying Wallin's motion to compel the CCA Defendants

to produce documents.  The CCA Defendants apparently disputed that they had

received the relevant requests for production of documents.  In any case, Magistrate

Judge Watanabe denied the motion because Wallin had failed to comply with

D.C.COLO.LCivR 7.1A prior to filing the motion.  In his objections, Wallin admits that

he failed to comply with the local rule, but notes that on October 7, 2004, after his

motion had already been denied, he filed a motion to amend his motion to compel

and several other motions to add his certification as required by the local rule.

Especially in light of the enormous number of motions Wallin files in this and his

other cases, I cannot find clear error in the fact that Magistrate Judge Watanabe did

not sua sponte revisit his October 5, 2004 minute order after receiving Wallin's

October 7 filing.  Accordingly,  Wallin cannot complain under these circumstances that

Magistrate Judge Watanabe never reached the merits of his motion.[5]

---

[5]In any case, Wallin provides no convincing evidence that the CCA Defendants
are misrepresenting the truth when they assert that they never received the requests
for production at issue, thereby failing to demonstrate clear error.  For instance,
although he attaches a copy of his requests for production addressed to the <u>CDOC
Defendants</u>, to which they responded, this does nothing to demonstrate that he sent
such requests to the CCA Defendants.

On October 28, 2004, Wallin filed an "Amended Objection to Order Denying Plaintiff's Motion Concerning Legal Access," (Docket # 174), which he subsequently asked me to consider as a motion to reconsider my October 21, 2004 order. However, Wallin has never filed a motion concerning legal access in this case, although he has in several other of his cases pending before me. (*See* Oct. 21, 2004 order, at 2-3). Consequently, this objection should be overruled.

In any case, to the extent Wallin now raises concerns regarding an alleged denial of adequate access to facilities and materials necessary to prosecute his cases before me, I find that he is not entitled to relief. Wallin raises a variety of arguments as to why the CDOC is not allowing him adequate access to materials and facilities to prosecute his cases. Taking judicial notice of the prodigious quantity of filings from Wallin in the three cases he has pending before me, I cannot determine that Wallin does not have adequate resources or time in the law library to prosecute his cases. Additionally, Wallin demonstrates no prejudice. For instance, to the extent this order dismisses some of Wallin's claims, my rationale is not dependent upon Wallin's failure to attach exhibits to his responses, or other reasons related to his asserted lack of legal resources. Furthermore, even could he establish that his delay in responding to the defendants' motions for summary judgment was a result of inadequate access to the library, I am reviewing the motions de novo, and have reviewed his response briefs, and have allowed him extensions of time to file both his objections and a reply brief. In conclusion, I find that Wallin's right of access to the courts has not been impeded to any material degree, and this motion will be denied. *See Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) (*quoting John L. v.*

8

*Adams*, 969 F.2d 228, 235 (6th Cir. 1992)). *See also Chandler v. Baird*, 926 F.2d 1057, 1062 (11th Cir. 1991) ("[m]any circuits have understood *Bounds* [*v. Smith*, 430 U.S. 817 (1977)] to require some showing of prejudice or injury" to support a claim of denial of access).

Wallin filed an objection (Docket # 177) to Magistrate Judge Watanabe's order denying his motion to compel the CDOC Defendants to Produce documents.  He first argues that the CDOC Defendants should be required to "produce" his medical and dental records, apparently meaning that they should be ordered to deliver copies to him.  Magistrate Judge Watanabe found that the CDOC Defendants had made such records available for him to view and copy, and that they were not required to provide such materials at their own expense.  *See Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980).  Wallin provides no authority contradicting this finding, but merely asserts that he expects CDOC to hinder his efforts to obtain the documents.  Such does not convince me there was clear error. In any case, Wallin's concern appears to be moot, as he attached to his objections copies of his medical records, which I have included in my review.

He also argues that the CDOC Defendants should have been ordered to produce grievance logs or records from lawsuits relating to KCCC and concerning "1) medical 2) staff/officers 3) excessive force 4) confiscations-deprivations, and 5) Officer Dycus,"[6]  (Mot. Compel CDOC Defs., ¶ 2,) as well as employee disciplinary records, job descriptions.  Magistrate Judge Watanabe found the request overly

---

[6]Officer Dycus is a party in one of Wallin's other cases filed in this court.

9

broad, vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and noted that the CDOC Defendants asserted that CDOC had no job descriptions.  Wallin argues that such discovery could be provided easily, is relevant by allowing him to establish the habit and/or routine practice of defendants, and questions the credibility of CDOC's assertion that no job descriptions exist.

"A litigant who seeks to overturn a magistrate's discovery order bears a heavy burden." *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 95 F.R.D. 398, 399 (D.C.N.Y. 1982).  *See also Smith v. MCI Telecom. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991) ("[b]ecause a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will generally grant the magistrate great deference").  Wallin does not leave me with the definite and firm conviction that Magistrate Judge Watanabe erred by finding his the broad scope of documents he sought unduly burdensome nor reasonably calculated to lead to the discovery of admissible evidence, and accordingly, I affirm.  *See Ocelot Oil Corp.*, 847 F.2d at 1464.

Wallin next filed an objection (Docket # 181) to Magistrate Judge Watanabe's decision to grant the CCA Defendants' motion for a protective order regarding interrogatories addressed to defendant John Doe, the executive director of CCA (Doe).  Based on Wallin's failure to attempt to identify and serve Doe until after the service deadline had passed, Magistrate Judge Watanabe ordered that the CCA Defendants need not respond to any interrogatories addressed to Doe.

Wallin asserts that he had sought the identity of Doe through informal discovery; however, the CCA Defendants deny this assertion, and indicate that Wallin never sought Doe's identity until after the written discovery deadline had passed. Wallin provides no evidence allowing me to find clear error in Magistrate Judge Watanabe's decision to credit the CCA Defendants' assertion.  Wallin also argues that the CCA Defendants were required to provide Doe's name and address as part of their initial disclosures under Fed. R. Civ. P. 26(a)(1)(A), which requires each party to provide, without request, the name and contact information of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses."  Wallin's argument fails because the mandatory disclosure provisions set forth in Rule 26(a)(1) are inapplicable to a prisoner pro se case.  Fed. R. Civ. P. 26(a)(1)(E)(iii).

Although Wallin filed his amended complaint on March 30, 2004, service has yet to be effected on Doe.  *See* Fed. R. Civ. P. 4(m) (complaint may be dismissed if not served within 120 days after the filing of the complaint).  *See also Ketchum v. Albuquerque Police Dept.*, 9 F.3d 117, 1993 WL 445092, at **2 (10th Cir. Nov. 4, 1993) (unpublished table decision) (affirming amended complaint's dismissal without prejudice for failure to serve within 120 days).  Under these circumstances, Magistrate Judge Watanabe's determination that discovery was not proper against Doe is not clearly erroneous.  Even if the protective order may have been error there have been no allegations nor factual demonstration that any John Doe was guilty of a constitutional violation, conversion, negligence, or outrageous conduct.  Accordingly this unnamed person should be dismissed for the reasons discussed infra,

11

rendering this discovery issue moot.

Wallin filed an objection (Docket # 182) to the order granting of the CCA Defendants' second motion to compel, arguing Magistrate Judge Watanabe erred in deeming it confessed because Wallin had timely filed a motion for an extension of time to respond.  The motion was filed on August 27, 2004, and Magistrate Judge Watanabe granted the motion on October 5, 2004.  Wallin asserts that he filed a motion for an extension of time on September 29, 2004, but my review of the docket reveals no such motion, although it does indicate that he filed a motion for an extension of time to respond to a motion from the <u>CDOC Defendants</u> (Docket # 134). In any case, Magistrate Judge Watanabe's order was also based on his finding that Wallin's objections to the CCA defendant's discovery requests were without merit, and Wallin does not argue that this determination was in error.

Wallin filed an objection (Docket # 199) to Magistrate Judge Watanabe's November 4, 2004 order denying Wallin's October 28, 2004 "Amended Motion to Compel CDOC Defendants to Answer First Set of Interrogatories."  Magistrate Judge Watanabe denied this motion based on my dismissal of all claims against the CDOC Defendants in a October 12, 2004 order.  However, Magistrate Judge Watanabe was mistaken; the October 12, 2004 order issued in a related case, 03-cv-174-WDM-MJW, and claims against CDOC Defendants remain pending in this case.  Consequently, the rationale of this order was in error.  However, because, as discussed below, I find that the error does not prevent me from granting the CDOC Defendants' motion, this objection will be overruled as moot.

Wallin filed an objection (Docket # 200) to Magistrate Judge Watanabe's

12

November 4, 2004 order granting the CCA Defendants' motion for sanctions for Wallin's failure to respond to certain discovery requests.  However, in granting the motion, Magistrate Judge Watanabe did not actually impose sanctions, but merely imposed an additional deadline with the threat of sanctions for noncompliance.  I find no clear error in the order, and the objection will be overruled.

Wallin filed an objection (Docket # 251) that Magistrate Judge Watanabe based his January 21, 2005 minute order on mootness, denying the motions at issue because he had already issued his recommendation on the substantive motions.  However, the order plainly states that the motions were denied because Magistrate Judge Watanabe found "no basis in law or fact" to grant any of the motions.  Wallin raises no substantive arguments, and this objection will be overruled.[7]

In summary, I find that Wallin's objections to discovery matters do not prevent me from accepting Magistrate Judge Watanabe's recommendation, and I therefore address Wallin's substantive arguments.[8]

_____

[7]Wallin also notes that, contrary to my instructions in my October 21, 2004 order, Magistrate Judge Watanabe failed to provide any rationale for his order denying Wallin's motion to amend the scheduling order, based on the fact that he has been denied adequate access to the law library.  Nonetheless, as discussed supra, Wallin has not demonstrated that his right of access to the courts is being impeded, including by being denied adequate time in the law library.  Accordingly, this error does not prejudice Wallin, or prevent me from accepting Magistrate Judge Watanabe's recommendation.

[8]The following nondispositive motions are also pending before me.      Four motions motions for extensions of time (Docket #s 206, 207, 208, 209) to file objections to orders of Magistrate Judge Watanabe denying Wallin's motion to recuse, a motion for "excusable neglect," a motion for leave to allow deposition by written interrogatories, and motion to allow Magistrate Judge Watanabe to conduct depositions.  Having reviewed the order and the motions, I find no clear error and

13

2.    Eighth Amendment Claim

Wallin objects to Magistrate Judge Watanabe's finding that Wallin was unable to establish a violation of the Eighth Amendment.  "Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998).  To prevail on a "conditions of confinement" claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is "sufficiently serious" to implicate constitutional protection, and (2) prison officials acted with " 'deliberate indifference' to inmate health or safety."  *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)(*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  To satisfy the first requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. " *Id.  See also Barney*, 143 F.3d at 1310 (*quoting Wilson v. Seiter*, 501 U.S. 294, 298) (to be "sufficiently serious," inmate must be deprived of "the minimal measure of life's necessities").

Courts have determined that deprivation of hygiene items may be sufficiently serious to state an Eighth Amendment claim.  *See Scott v. Case Manager Owens*, 80

therefore deny these motions for extension of time as moot.

Additionally, Wallin filed a motion to compel the CDOC Defendants to produce deposition transcripts from his deposition, apparently asserting that he is entitled a copy of the transcripts for his use in litigating this case.  Fed. R. Civ. P. 34(b) and 37(a) do not so provide.  In any case, he demonstrates no prejudice, as any statement he made in his deposition he could as easily provide as evidence as an affidavit or declaration under 28 U.S.C. § 1746.

Fed. Appx. 640, 643 (10th Cir. Nov. 7, 2003) (unpublished table decision) ("a denial of basic hygiene items might meet this standard [under the Eighth Amendment] under extreme conditions"). *See also Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir. 1991) (finding allegation that inmate was denied basic elements of hygiene stated claim under § 1983). Nonetheless, "[a]n inquiry into conditions of confinement by necessity relies on the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *DeSpain*, 264 F.3d at 974 (*quoting Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.2000)). In this inquiry, "the length of exposure to the conditions is often of prime importance." *Id.* Consequently, deprivations of hygiene items for short periods of time are not sufficiently serious to amount to a violation of the Eighth Amendment. *See Dopp v. W. Dist. of Okla*, 105 Fed. Appx. 259, 261 (10th Cir. Jul. 28, 2004) (unpublished table decision) ("[b]eing deprived of hygiene products for eight days is not sufficiently serious to implicate the Eight Amendment"); *Bridgeforth v. Ramsey*, 198 F.3d 257, 1999 WL 992978, at * 2 (10th Cir. Nov. 2, 1999) (unpublished table decision) (holding that alleged deprivation of, inter alia, hygiene items for five days was not sufficiently grave to state a claim of an Eighth Amendment violation).

On the other hand, courts, including the Tenth Circuit, have held that deprivations of hygiene items for longer periods of time may constitute sufficiently severe deprivations. *See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (assertion that deprivation of toothpaste for approximately two months caused recession and bleeding of gums and tooth decay created genuine issue of material fact regarding whether prison officials caused inmate serious harm). *See also Board*

15

*v. Farnham*, 394 F.3d 469, 483 (7th Cir. 2005) (alleged deprivation of toothpaste for three weeks stated claim of Eighth Amendment violation); *Carver*, 946 F.2d at 451 (deprivation of basic hygiene items for two weeks); *Chandler*, 926 F.2d at 1059, 1065 (deprivation of hygiene items and low cell temperature for fifteen days).

Defendants argue that Wallin suffered no deprivation, because on February 11, 2002, four days after Wallin's hygiene items were confiscated, Wallin purchased $43.45 worth of items, mostly junk food, but including a toothbrush, from the commissary, demonstrating that he could have replaced his hygiene items. Wallin, however, asserts that the commissary purchases were ordered only on Wednesdays, and then delivered one week later; he also indicates that the date money is debited from an inmate account does not necessarily coincide with the date the inmate either ordered or receives items. (Obj., Ex. 8.)[9] Consequently, because Wallin's items were confiscated on February 7, a Thursday, the earliest he could have obtained replacements from the commissary was February 20, resulting in thirteen days of deprivation. The record demonstrates that Wallin did, in fact, purchase and receive various hygiene items, including toothpaste and soap, on February 20.[10]

_____

[9]The CCA Defendants argue that I should ignore this evidence as it was never presented to Magistrate Judge Watanabe. However, I am permitted to receive additional evidence after a magistrate judge's recommendation, and the CCA Defendants provide no other reason why I should refuse to review pertinent evidence. *See Hunnicutt v. Hawk*, 229 F. 3d 997, 1001-02 (10th Cir. 2000).

[10]Additionally, Wallin provides evidence that on February 19, 2002, he had a dental appointment at which "gross cavities" were diagnosed, resulting in extraction of two teeth. (Pl.'s Obj., Ex. 3.) However, Wallin provides no evidence that this advanced tooth decay was caused by his lack of toothpaste for the preceding twelve days.

However, I am not convinced that the deprivation of baby lotion, baby powder, foot powder, toothpaste, and soap for thirteen days constitutes the "extreme conditions" necessary to make it a serious deprivation under the Eighth Amendment. *See Scott*, 80 Fed. Appx. at 643.  In particular, I do not find that an additional five days is sufficient to distinguish this case from *Dopp*, in which the Tenth Circuit succinctly held that "[b]eing deprived of hygiene products for eight days is not sufficiently serious to implicate the Eight Amendment."

Furthermore, even assuming that the deprivation was sufficiently serious, there is nothing in the record that would allow me to find that the Defendants acted with deliberate indifference to Wallin's needs.  A prison official is liable under the Eighth Amendment only if "the official knows of and disregards an excessive risk to inmate health and safety."   *Barney*, 143 F.3d at 1310 (*quoting Farmer*, 511 U.S. at 837).  *See also Despain*, 264 F.3d at 972 (internal quotations omitted) ("deliberate indifference entails something more than mere negligence but something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result. . . [the] deliberate indifference standard [is] equal to recklessness, in which a person disregards a risk of harm of which he is aware).

Here, with regards to most of the defendants, it is clear that they could not have acted with deliberate indifference to a risk of harm, because the evidence demonstrates that they were not even aware of Wallin's deprivation until after February 20, when he replaced (or at least, had had the opportunity to replace)[11] his

---

[11]To the extent Wallin did not replace needed hygiene items but had the ability to, he cannot obtain relief under the Eighth Amendment.  *See Gross v. Koury*, 78 Fed.

missing hygiene items, thereby eliminating the risk.  With the exception of D. Satterly and Sloan, Wallin did not inform any of the defendants about the confiscation of his hygiene items until after February 24, 2002, when he had already replaced his hygiene items. (*See* Amd. Compl., ¶¶ 10-41; Wallin Dep., at 28-42.)  Furthermore, with regards to Sloan, it is undisputed that he did not learn of the alleged deprivation until February 18.  As a result, Sloan can be deemed responsible for, at most, two days in which Wallin was deprived of his hygiene items, and under *Bridgeforth* and *Dopp*, discussed *supra*, his conduct could not have resulted in a sufficiently serious deprivation to result in liability under the Eighth Amendment.

With regards to the remaining defendants, although Alfaro, Burk, Gansemer, Miller, D. Satterly and R. Satterly were likely aware that Wallin's property, including his hygiene items, had been confiscated, there is no indication that they acted with deliberate indifference.  *See Barney*, 143 F.3d at 1310 ("a prison official is liable only if the official knows of and disregards an excessive risk to inmate health and safety." Indeed, there is no direct evidence in the record regarding any intent on the part of these defendants.  *Cf. Penrod*, 94 F.3d at 1404-05, 1406 (finding issue of fact remained based on plaintiff's evidence that the defendants *retaliated* against him by denying free toothpaste and razors for two months).

Likewise, there is no evidence that these defendants were aware of any risk of

---

Appx. 690, 695 (10th Cir. Oct. 20, 2003) (unpublished table decision) (allegations that inmate "made a personal choice between spending his funds on hygiene products or unspecified litigation costs" are insufficient to state a claim under the Eighth Amendment).

harm to Wallin.  *See Barney*, 143 F.3d at 1310 (it is "not enough to establish that the official should have known of the risk of harm").  Although Wallin asserts that the deprivation aggravated his tooth decay and a pre-existing skin condition, it is undisputed that he never raised these concerns with Alfaro, Burk, Gansemer, Miller, or R. Satterly, and he notes no other way in which they might have been informed. Furthermore, although he addressed an inmate request form regarding the issue to D. Slattery, the only evidence in the record–Wallin's sworn amended complaint–does not indicate that Wallin provided D. Satterly with information sufficient to alert him to a risk of serious harm facing Wallin.  Rather, according to the complaint, Wallin filled out an informal grievance form to Satterly "explaining that his personal private property had been seized without reasoning including his hygiene items and that he needed his personal property back or replaced."  (Amd. Compl., ¶ 8.)  There is no indication Wallin notified Satterly that he was suffering health problems as a result of the deprivations.

Accordingly, I agree with Magistrate Judge Watanabe that Wallin's Eighth Amendment claim must be dismissed as to all the defendants.

3.    <u>State Law Claims</u>

Magistrate Judge Watanabe found, inter alia, that Wallin's state law claims should be dismissed against the CDOC Defendants as barred by the CGIA.[12]  I agree.

_____

[12]Magistrate Judge Watanabe appears to recommend dismissal of the claims against all the CDOC Defendants under Colo. Rev. Stat. § 24-10-108.  However, this provision appears, from its language, to provide protection only for "entities," and not individuals.  Indeed, the CDOC Defendants raised it only to the extent Wallin was asserting claims against the CDOC itself.  As noted above, Wallin's amended

Colo. Rev. Stat. § 24-10-109(1) provides:

> Any person claiming to have suffered an injury by a public entity or by an
> employee thereof while in the course of such employment, whether or
> not by a willful and wanton act or omission, shall file a written notice as
> provided in this section within one hundred eighty days after the date of
> the discovery of the injury, regardless of whether the person then knew
> all of the elements of a claim or of a cause of action for such injury.

This notice provision of the CGIA applies when federal courts hear Colorado tort

claims under supplemental jurisdiction. *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th

Cir. 2003). When a claim is asserted against the state or a state employee, the notice

must be filed with the attorney general. Colo. Rev. Stat. § 24-10-109(3). "[F]ailure to

comply with the 180-day period is an absolute bar to suit." *Id.* (*quoting Gallagher v.*

*Bd. of Trs. for Univ. of N. Colo.*, 54 P.3d 386, 390-91 (Colo. 2002)).

Magistrate Judge Watanabe found that Wallin filed his first notice pursuant to

the CGIA on March 24, 2003, which Wallin does not dispute. This was more than a

year after his property was confiscated in February 2002, he was first denied access

to his clothing in February 2002 and it was more than 180 days after he received

notification from Gillespie (on September 18, 2002) denying his final request for relief

from any of the defendants. (Amd. Compl., Att. A.)

Nonetheless, Wallin asserts in his objections, as well as in his belated

response brief, that "the underlying facts and elements to the possible cause of

action were not fully discovered until sometime after the month of September 2002."

(Pl.'s Obj., at 30.) However, the plain language of the statute provides that it is the

date the plaintiff discovers the *injury*, and not the elements of his claim, that controls.

_____

complaint does not name CDOC as a defendant.

*See* Colo. Rev. Stat. § 24-10-109(1).  Furthermore, Wallin's conclusory assertion, that

he discovered such information "sometime after the month of September 2002," is

insufficient to survive a motion for summary judgment.[13]  *See Harvey Barnett, Inc. v.*

*Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (quotation omitted) ("[c]onclusory

allegations that are unsubstantiated do not create an issue of fact and are insufficient

to oppose summary judgment").  Consequently, I agree with Magistrate Judge

Watanabe that Wallin's three state law claims must be dismissed as to the CDOC

Defendants.

Magistrate Judge Watanabe also recommended that Wallin's outrageous

conduct and negligence claims be dismissed as lacking merit as to the CCA

Defendants.  Regarding claim two, asserting intentional infliction of emotional

distress, he found that Wallin had failed to provide any evidence that the defendants

committed outrageous conduct.

In Colorado,"[t]he elements of outrageous conduct are: (1) the defendant(s)

engaged in extreme and outrageous conduct, (2) recklessly or with the intent of

causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe

emotional distress."  *Riske v. King Soopers*, 366 F.3d 1085, 1089 (10th Cir. 2004)

(*quoting Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. Ct. App. 2002)).  Under

the first element, extreme and outrageous conduct is conduct that "goes 'beyond all

---

[13]Wallin does not assert that he could have obtained discoverable information
relevant to this defense had his motion to compel, discussed above, been granted.
Consequently, Wallin's objection does not prevent me from granting the CDOC
Defendants' motion as to these claims.

possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (*quoting Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)). The level of outrageousness required is "extremely high."  *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).  It is for me to determine, in the first instance, whether reasonable people "could differ on the outrageousness issue." *Id.* (*quoting Meiter v. Cavanaugh*, 580 P.2d 399, 401 (Colo. 1978)).

While I agree with Wallin that Magistrate Judge Watanabe's characterization of the record is somewhat imprecise, I disagree that the facts demonstrate that the defendants' actions and omissions constituted outrageous conduct.  Wallin has presented facts, which if believed by a factfinder, would establish that defendants Alfaro, Burk, Gansemer, Miller, and R. Satterly confiscated his property, including necessary hygiene items including his toothpaste, soap, and deodorant, without providing a legitimate reason for doing so, and that the remaining defendants did not act to remedy the deprivation.  Nonetheless, I do not find that  reasonable people could find that this conduct rises to the "extremely high" level required by Colorado courts; i.e., that it was so extreme as to be "atrocious, and utterly intolerable in a civilized community." *Riske*, 366 F.3d at 1089; *Floyd*, 978 P.2d at 666.  Accordingly, this claim will be dismissed.

Magistrate Judge Watanabe recommended that Wallin's negligence claim against defendants Bair, Brill, Fuchs, D. Satterly, and Sloan be dismissed because the defendants "had no duty to Plaintiff relative to his request from replacement of his property nor could there be any possible breach of a duty."  (Recommendation, at 22.) Wallin objects to this determination.

22

The elements of a negligence claim in Colorado are: (1) the existence of a legal duty by the defendant to the plaintiff; (2) breach of that duty by the defendant; (3) injury to the plaintiff; and (4) a sufficient causal relationship between the defendant's breach and the plaintiff's injuries. *Connes v. Molalla Trans. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992). The initial question is whether the defendant owed a legal duty to protect the plaintiff against injury, and this question is one of law, to be determined by the court. *Id.* Relevant factors include, "for example, the risk involved, the foreseeability and likelihood of injury as weighted against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor." *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo. 1992). However, the ultimate question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards–whether reasonable persons would recognize a duty and agree that it exists." *Id.* (*quoting Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987)).

I agree with Magistrate Judge Watanabe that Wallin cannot prevail on his negligence claim. First, Wallin's arguments and citations to case law regarding the Defendants' constitutional obligations under the Due Process Clause are inapposite to this state law negligence claim. Second, while Wallin suggests a duty to "safeguard" his property arises from the applicable administrative regulation, even assuming such a duty exists, there is no indication in the record that defendants Bair, Brill, Fuchs, D. Satterly, and Sloan (or Doe) ever had custody of the property in question. Finally, Wallin argues that the confiscating officers' failure to list each seized item on the shakedown list violated another regulation-imposed duty.

23

However, none of the confiscating officers (Alfaro, Burk, Gansemer, Miller, and R. Satterly) are named as defendants in Wallin's negligence claim.  Accordingly, I agree with Magistrate Judge Watanabe and find that this claim should be dismissed with prejudice.

The CCA Defendants also argue that Wallin's state law claims must be dismissed for failure to comply with Colo. Rev. Stat. § 13-17.5-102.3(1), which provides that "[n]o inmate shall bring a civil action based upon prison conditions under any statute or constitutional provision until all available administrative remedies have been exhausted in a timely fashion by the entity operating the detaining facility and inmate."  However, by its plain language, this provision applies to claims, unlike Wallin's state law claims, brought pursuant to a statute or constitutional provision.

Alternatively, Magistrate Judge Watanabe recommended that I refuse to exercise supplemental jurisdiction over Wallin's state claims.

> A district court has discretion whether to exercise supplemental jurisdiction over state law claims once the federal question has been dismissed. 28 U.S.C. § 1367(c). 'In making its determination, the district court should take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants,'. . . [as well as] the particular circumstances of the case including the nature and extent of the pretrial proceedings.

Olcott v. Delaware Flood Co. 76 F.3d 1538, 1550 (10th Cir. 1996) (quoting Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277, 1284 (3d Cir.1993)).  See also Thatcher Enterprises v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990) ("[t]he district court has discretion to try state claims in the absence of any triable federal claims; however, that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience,

24

and fairness would be served by retaining jurisdiction").

Here, given the extensive pretrial proceedings in this case, judicial economy, convenience, and fairness all weigh in favor of my exercising jurisdiction over Wallin's remaining claim. Consequently, I disagree with Magistrate Judge Watanabe and will retain jurisdiction over Wallin's remaining claim of conversion. Magistrate Judge Watabnabe did not make a substantive recommendation concerning this claim and the parties do not provide argument allowing me to rule at this juncture.

Accordingly, it is ordered:

1.     The recommendation issued January 20, 2005, by Magistrate Judge Watanabe is accepted in part and modified in part, as discussed herein.

2.     Plaintiff's objections to the recommendation, filed March 15, 2005, are sustained in part and overruled in part.

3.     Defendants Alfaro, Bair, Brill, Burk, Fuchs, Gansemer, Miller, D. Satterly, R. Satterly and Sloan's motion for summary judgment, filed November 12, 2004 (Docket # 166) is granted in part and denied in part.

4.     Defendants CDOC, Bongirno, Gillespie, and Ortiz' motion for summary judgment, filed November 12, 2004, (Docket # 190), is granted.

5.     Defendant's claim one, asserting a violation of the Eighth Amendment, is dismissed with prejudice.

6.     Plaintiff's claim two, asserting a claim of conversion, is dismissed with prejudice as to defendants Bongirno, Gillespie, and Ortiz, as well as Doe.

7.     Plaintiff's claim three, asserting a claim of negligence, is dismissed with

25

prejudice.

8.      Plaintiff's claim four, asserting a claim of intentional infliction of

emotional distress, is dismissed with prejudice.

9.      Plaintiff's December 14, 2003 motion to compel (Docket # 225) is

denied, and his motions for an extension of time (Docket #s 206, 207,

208, and 209) are denied as moot.

10.     Plaintiff's objections filed under Docket #s 171, 174, 177, 181, 182, 199,

200 are overruled.

11.     This case remains pending on Plaintiff's claim two (conversion), against

defendants Alfaro, Burk, Gansemer, Miller, and R. Satterly.

DATED at Denver, Colorado, on September 2, 2005.

BY THE COURT:


/s/ Walker D. Miller
United States District Judge